## AMERICAN SODA FOUNTAIN COMPANY, PLAINTIFF IN ERROR, v. WILLIAM F. STOLZENBACH, DEFENDANT IN ERROR.

Argued June 21, 1907—Decided March 2, 1908.

1. An affidavit of consideration, annexed to a chattel mortgage securing the payment of notes given as the purchase price of a soda fountain apparatus, which states that the consideration is the apparatus, describing it, is a substantial compliance with the statute (*Pamph. L.* 1902, *p.* 487) in this respect.

2. A corporation, in common with a natural person, may act either in chief or by an agent. In the former case, being an artificial person, it can act only through the office of some natural person who is, on this account, called its officer, and who, being thus inherent in such artificial person, is not as regards it an *alius* or other person, and hence is not its agent within the meaning of the maxim *qui facit per alium facit per se*. A statute that authorizes the doing of a certain act by a corporation or by its agent should be given effect by permitting the corporation to act either *per se* through its officer or *per alium* through its agent.

3. Under the "Act concerning mortgages on chattels (Revision of 1902)," and section 4 thereof (*Pamph. L.* 1902, *p.* 487), where a corporation is the holder of a mortgage, the affidavit of consideration may be made in its behalf by an officer thereof acting under the authority of the corporation and possessed of the requisite knowledge to make such affidavit as the law prescribes. Such an affidavit is, in legal contemplation, the affidavit of the corporation and not the affidavit of an agent or attorney.

4. An affidavit of consideration, made and recited to be made by the vice president of the corporate holder of the chattel mortgage, was therefore the affidavit of the corporation, and valid without allegation of specific authority. The fact appearing that the affidavit was made by such officer was *prima facie* evidence that he was acting in his proper official capacity and by authority. The allegations of the affidavit were sufficient to demonstrate that he possessed the requisite knowledge to make the affidavit. *North Penn Iron Co.* v. *Boyce*, 42 *Vroom* 434, distinguished.

In replevin. On error to Atlantic Circuit.

For the plaintiff in error, *Thompson & Cole.*

For the defendant in error, *William M. Clevenger.*

The opinion of the court was delivered by

DILL, J. The American Soda Fountain Company, a New Jersey corporation, sold a fountain to one Brownley, who gave his notes therefor to the company, secured by a chattel mortgage upon the property, which was duly recorded. Subsequently, a judgment creditor of the mortgagor seized the property in the mortgagor's possession. The American Soda Fountain Company thereupon instituted an action in replevin, in which the defendant claimed title under a judgment, execution and sheriff's sale, the company, in opposition to this claim, relying upon its chattel mortgage.

The case was tried upon stipulated facts on the theory that, if the affidavit to the chattel mortgage complied with the statute, title was in the mortgagee, the plaintiff in error here. The affidavit was as follows:

"COUNTY OF PHILADELPHIA, }
    "State of Pennsylvania,      } ss.

"Alfred H. Lippincott, of full age, being duly affirmed according to law, saith that he is vice president of American Soda Fountain Co., the mortgagee named in the foregoing chattel mortgage; that the true consideration thereof is for one 20 Syrup 6 Draught 'Penrose' Soda Water Apparatus

with Mahogany Top and Fountains, One Cherry Refriger-
ator, one 6 ft. Oak Sink and Sundries, and that the amount
due and to grow due thereon is the sum of Two thousand two
hundred and twenty-seven dollars, with interest on the same
from the 1st day of August, A. D. 1901, which constitutes its
interest in the goods and chattels mentioned in the schedule
thereunto annexed.

"A. H. LIPPINCOTT,
    *"Vice President.*

"Affirmed and subscribed to before me this twenty-third
day of October, 1901.

"DANIEL S. MANN,
*"Commissioner of Deeds for New Jersey."*

Admittedly the mortgage in question is void as to the de-
fendant in error unless it had "annexed thereto an affidavit or
affirmation made and subscribed by the holder of said mort-
gage, his agent or attorney, stating the consideration of said
mortgage and as nearly as possible the amount due and to
grow due thereon." Chattel Mortgage act (*Pamph. L.* 1902,
*p.* 487, § 4).

The court below held the mortgage void as to creditors, on
the ground—*first,* that this affidavit did not state the true
consideration; and *second,* because it was verified by the vice
president as such, and did not recite that he was the agent
or attorney of the company and specifically authorized to
make it.

As to each of these grounds we think the decision of the
trial judge was erroneous.

In the absence of fraud, instruments so common in the
course of commercial transactions by the laity should be sus-
tained whenever there is an honest and substantial compliance
with the statute. Criticisms directed to matters of artifice,
rather than to those of substance, ought not to prevail. *Kelly*
v. *Calhoun,* 95 *U. S.* 710.

As to the consideration, the criticism is that the affidavit
states that the consideration was the property, whereas it

should have stated that it was the price of the property. This objection is, we think, captious, and does not go to the substance of the transaction stated.

Strictly speaking, the consideration was neither the property nor the price, but was "the delivery of the apparatus with the right to acquire title.". *American Soda Fountain Co.* v. *Vaughn,* 40 *Vroom* 582. The statement of the affidavit, while not artificially beyond criticism, is a substantial compliance with the statute.

A similar question was before this court in 1891 as to whether the consideration was truly stated in an affidavit upon which a judgment by confession had been entered.

The statute there under review was quite similar in purpose and intent to the section of the Chattel Mortgage act before us.

The facts were that upon a sale of lumber the vendee had given certain notes secured by a bond with a warrant to enter judgment thereon by confession. The affidavit on which the judgment was entered, which stated that the consideration of the bond was lumber, was held good, Mr. Justice Garrison, in the Circuit Court (59 *Atl. Rep.* 339), saying:

"If the affidavit state the consideration by giving truthfully the substance of the transaction, a judgment entered for an honest demand for an actual indebtedness, and without fraudulent purpose, will not be open to the attack of other creditors merely because the affidavit is inartificially drawn."

This case, which was affirmed upon the opinion of Justice Garrison in the court below (*Strong* v. *Gaskill,* 24 *Vroom* 665), is, in principle, directly opposed to the contention of the defendant in error.

The affidavit before us is in like sense a substantial compliance with the statutory requirement. *Douglas* v. *Williams,* 48 *Atl. Rep.* 222; *Camden Safe Deposit Co.* v. *Burlington Carpet Co.,* 33 *Id.* 479, both cases in the Court of Chancery.

The second ground of attack of the defendant in error rests on two premises:

The *first,* that when a statutory affidavit is made by an agent or by an attorney specially appointed, the affidavit must

demonstrate by recitation that the affiant is in fact such agent or attorney, is duly appointed, and that, in the making of the affidavit, he is acting within the scope of his authority.

The *second,* that a corporation cannot make such an affidavit *per se,* but only *per alium* by an agent or by an attorney.

Resting upon these premises the defendant in error urges that the affidavit of consideration in this case, reciting that the affiant is the vice president of the corporation, the holder of the mortgage, is a nullity, and that therefore the mortgage is void as against creditors.

His points are: *First,* that the vice president, as such, *virtute officii* has no authority, *prima facie,* to act for the corporation in this matter; in other words, that our corporation statute does not in express terms name the vice president as a statutory officer and does not define his powers; *second,* the first proposition being correct, that the affidavit of an officer comes within the rule above cited as to the requisites of an affidavit by an attorney or agent and should have set forth that the affiant was the agent or attorney of the corporation, was duly appointed and was acting under corporate authority.

Assuming, but not deciding, that the requirements as to an affidavit made by an attorney or agent are as stated in the first premise, if the effect of the statute under consideration was to limit the class of persons by whom the affidavit might be made to agents and attorneys of the holder, there would be more force in the criticism of the defendant in error.

On the contrary, the statute specifically provides that the affidavit is to be made by the "holder" of the mortgage, adding in the alternative "his agent or attorney." Inasmuch as a corporation may be a holder of a chattel mortgage, a judicial decision that as such holder it may make the affidavit only by an agent or attorney specially appointed, would rest either upon the denial of the right of a corporation to be a holder within the meaning of and entitled to the benefits of the statute, or else upon the assumed right of the court to nullify one of the three modes by which the legislature has allowed the affidavit to be made. There is, however, no necessity for assuming either of these untenable positions. A cor-

poration may be a holder of a chattel mortgage and may make this statutory affidavit, as such holder, through its administrative officers, or it may make it by a duly-authorized agent or by its attorney.

The fallacy of the argument of the defendant in error is that it fails to note the distinction between a corporate act, performed through the intermediation of a person specially empowered to act as its agent or its attorney, and a like act done immediately by the corporation through its own administrative officers, its inherent agencies. The right of an artificial person to empower and employ agents or attorneys is identical with that of a natural person—each is governed alike by the law of principal and agent.

The fundamental difference between the natural and the artificial person is that the latter, even when not acting as a principal through the intermediation of an agent, acts through some agency, inherent in its corporate form.

Normally such agency inheres in the natural persons who hold and administer the offices of the corporation.

The analogy of a natural body having a head and members holds good in the case of the artificial body, the common and declared law recognizing that the officers are the means, the hands, the head, by which corporations normally act. *Bank of Toronto* v. *McDougall,* 15 *U. C. C. P.* 475, 482.

The very word "officer" has this precise meaning. Webster gives the etymology of the word as *"ops"* (help), and *"facere"* (to do or act). Hence when a corporation does not go outside of its corporate machinery and capacity in doing a corporate act, it is a confusion of terms and of ideas to say that it is acting through an agent when the fact is that it is acting through an agency, and in chief. This distinction is not merely verbal, and hence trivial, but, on the contrary, marks the wide difference that exists between acting for oneself by an inherent faculty and the employment of another person to act for one and in one's stead.

In this, as in all cases, loose terminology implies and conduces to loose reasoning. The maxim *qui facit per alium*

*facit per se* requires and should be applied only when the agent, the *alius,* is not the principal acting for himself.

That a corporation does and may so act was expressly declared by Chief Justice Hornblower in 1834 (*New Brunswick Steamboat, &c., Co.* v. *Baldwin,* 2 *Gr.* 440), and by Chief Justice Ewing in 1829 (*Trenton Banking Co.* v. *Haverslick,* 6 *Halst.* 171), and their declarations have become the leading cases upon this question.

So, in *Hopper* v. *Lovejoy,* 2 *Dick. Ch. Rep.* 573, this court declared that "in the eye of the law" the acknowledgment annexed to a chattel mortgage made by an officer of the grantor was the acknowledgment of the grantor itself, as distinguished from the act of an agent or attorney.

The rule laid down by Chief Justice Hornblower, that "an affidavit made by the president, secretary or other proper officer or agent of a corporation, where the corporation is a party to the suit, is, in legal contemplation, an affidavit made by the party," has stood unchallenged since 1834.

The doctrine has been reaffirmed in the well-reasoned opinions in other jurisdictions, and in many instances these early decisions of our Supreme Court are cited as leading cases. *Schaft* v. *Phœnix Mutual Life Insurance Co.,* 67 *N. Y.* 544.

The Canadian courts in 1864 declared for this principle, and in a case upon all fours with the case here.

The issue there, as in the present case, was as to the validity of "the affidavit of *bona fides*" of a chattel mortgage made by one of the officers of the corporation, in which affidavit there was neither a recital of specific authority nor a statement that the officer was the agent of the corporation, nor was there any evidence, statutory or otherwise, that the officer *virtute officii* had power to bind the corporation. Moreover, the statutes of Canada at that time required that where such an affidavit was made by the agent or attorney of the corporation it must be accompanied by proof of authority. The question here was thus squarely presented and decided.

Chief Justice Richards held that when the officer made the affidavit he did not act as an agent. He said that the officer was "exercising the corporate powers of the institution in the

only way in which they can be exercised at all. He acts directly and in chief, and not by delegation." He added that the affidavit "may properly be considered as the affidavit of the mortgagee, made in the only way the mortgagee could make the affidavit, namely, through its administrative officer." *Bank of Toronto* v. *McDougall*, 15 *U. C. C. P.* 475, 482.

Among the authorities in other jurisdictions are: *Schaft* v. *Phœnix Mutual Life Insurance Co.*, 67 *N. Y.* 544 (*Court of Appeals*); *Sumner* v. *Dalton*, 58 *N. H.* 295; *Yost* v. *Bank of Santa Ana*, 94 *Cal.* 494; *Alfcritz* v. *Scott*, 130 *Id.* 474; *Bank* v. *Hutchison*, 87 *N. C.* 22.

As to the office of vice president, see *Smith* v. *Smith*, 62 *Ill.* 493; *Sawyer* v. *Cox*, 63 *Id.* 130.

Similarly the rule is established in New York that the verification of a pleading by any officer of a corporation is the verification of the corporation; that because an officer of the corporation acts in chief and not by delegation in making such verification he is neither an agent nor an attorney, nor within the rule that an agent or attorney must state his authority and the sources of his information and the grounds of his belief. "Such verification," says the court, "is the verification of the corporation and a verification by the party." *American Insulator Co.* v. *Bankers', &c., Telegraph Co.*, 13 *Daly* (*N. Y.*) 200, 205; *Henry* v. *Brooklyn Heights Railroad Co.*, 43 *Misc. Rep.* (*N. Y.*) 589, 590.

So, in *Bank* v. *Hutchison, supra,* the Supreme Court of North Carolina, upon like reasoning, held that "the verification of pleadings by an officer of a corporation is the verification of the corporation itself."

The English decisions, drawing a distinction between the act of an administrative officer in behalf of the corporation and the act of the corporation by an attorney or agent, hold, in the case of the officer, that the act of the corporation is *per se*, but that the act of the corporation through an agent or attorney is *per alium*. *Deffell* v. *White*, 36 *L. J., C. P.* (*N. S.*) 25 (1866); *Shears* v. *Jacobs*, 35 *Id.* (*Part* 2) 241 (1866); *Penwarden* v. *Roberts*, 51 *L. J., C. L.* (*N. S.*) (*Part* 2) 312 (1882).

Our conclusion that the affidavit of the vice president is, *prima facie,* the affidavit of the corporation, the holder of the mortgage, is in accord with the reasoning of this court in *Hopper* v. *Lovejoy, supra.* In that case this court held that the acknowledgment of the president was the acknowledgment of the corporation. The commissioner certified that there personally came before him James H. Ferguson, "president of the company, which I am satisfied is the grantor in the within indenture named," &c.

Justice Dixon, speaking of the Recording act, says: "The act, says the officer taking the acknowledgment, must be satisfied that the person executing and acknowledging the deed is the grantor mentioned in it. With regard to corporate deeds, he must therefore be satisfied that such person is, in the eye of the law, the grantor mentioned in it—that is, authorized to represent the corporation in executing and acknowledging the conveyance. Being so satisfied, he accepts the acknowledgment of the representative as that of the grantor itself," citing with approval *Merrill* v. *Montgomery, 25 Mich.* 73, where the Supreme Court of Michigan held that the acknowledgment by the cashier was the act of the bank.

As opposed to the view for which we are contending, the case of *North Penn Iron Co.* v. *Boyce, 42 Vroom* 434, in our Supreme Court, is cited. That was a motion to quash a writ of attachment upon the ground that the affidavit made by the secretary of a corporation was not authorized.

The ground of that decision, however, was that the authority of such officer, having been expressly defined and limited by the then existing statute, would not, in the face of such limitation, be extended by mere implication.

The question now under consideration was not decided, and, apparently, not considered—certainly not in any fashion commensurate with its importance.

If that opinion be cited as holding, and to the extent that it decides that a corporation cannot act through an officer save as it has contracted with him and given him authority under the law of principal and agent, or that an administrative officer cannot make, in behalf of the corporation, a

statutory affidavit except as the *alius,* the agent of the corporation and subject to the rules and limitations of an agent, then it is repugnant to the well-considered opinions of the same court which we have cited with approval and to our conclusion here.

In the light of this fundamental distinction the argument made to us by the defendant in error falls far short of the mark, for the reason that it is addressed wholly to the law of principal and agent, and not at all to the corporate law touching official function and agency.

Thus it is insisted that the affidavit upon which depends the validity of the chattel mortgage in this case must appear to have been made by "the holder of said mortgage, his agent or attorney;" that the vice president of a corporate holder is not, by virtue of his office, the agent of the corporate holder for the purpose of making such an affidavit, and hence the affidavit is a nullity.

It is also insisted that the affidavit before us must, if made by an officer of the corporation, be made by some officer specifically named in and whose powers are created by statute, and who therefore is, under the statute, *virtute officii,* the attorney or agent of the corporation and specifically authorized to make such an affidavit.

The affidavit before us, it is said, is a nonentity, is made by a stranger to the record, the argument being that a vice president is not an officer specifically named by statute although included under the provisions of our statute authorizing "other officers, agents and factors" (section 14, Corporation act; *Pamph. L.* 1896, *p.* 277) ; that the statement in the affidavit that the affiant is the vice president carries with it no *prima facie* evidence of official relationship or authority of the corporation; that it amounts to nothing in the absence of specific language that he is the agent of the corporation and was precedently authorized to make the affidavit.

These arguments as to *"qui facit per alium"* are evidently pointless upon the question of what a corporation may do *"per se."*

This whole line of argument is not only wide of the mark for the reason already stated, but also involves the further and fundamental error of assuming that the issue here arises under the law of principal and agent, and the question is as to the authority of an officer to bind a corporation as by a contract, where the corporation repudiates the act and denies the corporate obligation, whereas the question here is at once a narrower and different one.

The vice president, in making the affidavit of consideration annexed to the chattel mortgage, was not attempting to bind the company as by a contract; he was merely performing an act ancillary to a contract already made, which ancillary act was inherently and inevitably beneficial to the corporation.

The contract, viz., the mortgage, was good as between the parties without this affidavit. It had been executed.

The affidavit was but a statutory condition precedent to recording the mortgage and thus obtaining the wider benefits of a public record. The action of the vice president in making the affidavit, as well as the act of recording it, were alike, to use the term employed in *Angell & Ames on Corporations,* "incidental services," as distinguished from acts creating a liability on the part of the company.

How can the defendant in error, upon the record here, successfully challenge the action of the vice president as unauthorized? Indubitably, the sale of the goods, the acceptance of the credit, the receipt of the chattel mortgage, were acts of the American Soda Fountain Company. Likewise, after the affidavit had been made, the corporation availed itself of it and recorded the affidavit and the mortgage, thus making it the act of the corporation.

Neither the corporation nor anyone authorized to speak for it at that time or subsequently took exception to the action of the vice president in making the affidavit or dissented from the action of the corporation in availing itself of this act.

It is further to be considered that the plaintiff in error, through its counsel, in the court below and here offers the mortgage in question and declares that the affidavit was authorized.

As to form and substance the affidavit is sufficient, and the averments of the affidavit are to be relied upon to show that the affiant held a well-recognized office in the corporation, viz., he was the vice president, and had the requisite knowledge and information.

It seems to us that the mortgage as a whole, including the affidavit, was, under the evidence in this case, clearly and palpably the act of the corporation.

Whether the vice president had general authority, by virtue of his office or under the certificate of incorporation or by the by-laws, or whether he had been designated under corporate authority to make the affidavit, is immaterial.

From what we have said the presumption arises that the corporation requested its vice president, either by virtue of his office or in behalf of the corporation, *pro hac vice,* to make the affidavit for it, and the defendant in error offers no evidence to the contrary.

The Supreme Court of New Hampshire, in *Sumner* v. *Dalton,* 58 *N. H.* 295, arrived at this same result, and by practically the same reasoning. In that case the affidavit of consideration to a chattel mortgage was made by one of three selectmen of the municipality to which the mortgage was given. A junior creditor attacked the validity of the mortgage, claiming that the affidavit was defective inasmuch as the selectman *virtute officii* had not the power to make the affidavit, and that his authority could not be by implication said to extend to the act in question because the statute provided that the action of a majority of the three selectmen was necessary to bind the municipality, hence one selectman could not act.

The Supreme Court, after pointing out that there was no question involved of principal and agent, and consequently of power to bind the municipality, held that the affidavit in question, being a mere beneficial act and one of which the corporation had availed itself, did not come within the purview of the statute which required the action of a majority of the selectmen in order to bind the municipality, and sustained the validity of the mortgage.

The Court of Appeals of New York, in an instructive and pertinent case, reviewing the authorities and citing the Trenton Banking Co. case, held that the verification of a petition of removal into the United States Circuit Court was good, although made by the statutory officer authorized to receive process in New York, and containing no recital of authority either arising from his office or delegated to him by the corporation. The decision was squarely against the theory of the defendant in error here, and held to the rule of Chief Justice Hornblower in *New Brunswick Steamboat, &c., Co.* v. *Baldwin, supra; Schaft* v. *Phœnix Mutual Life Insurance Co., supra.*

In view of these authorities, it is unnecessary to answer the objection which lies at the foundation of the contention of the defendant in error, that, where a party to a transaction is a corporation, and the statute deals only with individuals, and not with corporations, and the party is required to make an oath or to make an acknowledgment, corporations thereby are barred *per se* from the benefit of the provision. The final answer in this state has always been an emphatic negative. The question was raised in an attachment case (*Trenton Banking Co.* v. *Haverslick, supra*) ; in the case of an affidavit on appeal and *mandamus* (*New Brunswick Steamboat, &c., Co.* v. *Baldwin, supra*) ; in regard to the right of a corporation to acknowledge a chattel mortgage (*Hopper* v. *Lovejoy, supra*) ; likewise, ·in New York state, in a matter of a petition to remove to the United States Circuit Court. *Schaft* v. *Phœnix Mutual Life Insurance Co., supra.*

In this court it was lately urged in behalf of a corporation that, because the Chancery act of this state did not recognize a corporation by name, service of a subpœna *ad respondendum* was ineffectual unless served "upon the stockholders or the directors or the trustees when convened as a body or upon the registered statutory agent." The service was made upon the vice president, and the argument there, as here, was that the vice president was not a statutory officer authorized to receive the process.

Applying the principal that, in the absence of statutory enactment to the contrary, the name "person" in a statute included the corporation if it fell within the general reason and design of the act, both as to the benefits and restrictions of the act, we held that service upon an officer of the defendant corporation was equivalent, under the statute, to personal service upon an individual defendant, and that the service of a *subpœna ad respondendum* upon the vice president was personal service on the corporation. *Martin* v. *Atlas Estate Co.,* 65 *Atl. Rep.* 881.

In this case we hold that a statute that authorizes the doing of a certain act by a corporation or by its agent should be given effect by permitting the corporation to act either *per se* through its officer or *per alium* through its agent; and furthermore that where it becomes necessary for a corporation, to gain the advantage of a statute or otherwise, to make an affidavit, the affidavit may be made in its behalf by an officer thereof acting under the authority of the corporation and possessed of the requisite knowledge to make such an affidavit as the law requires; that such affidavit is, in legal contemplation, the affidavit of the corporation and not of an agent or attorney.

This principle is applicable to the affidavit in the present case made under the "Act concerning mortgages on chattels (Revision of 1902)," and (*Pamph. L.* 1902, *p.* 487, § 4), where the corporation is the holder of the mortgage. In such case a recital of the official relationship of the affiant to the corporation is sufficient, without proof of the authority of the affiant, either *virtute officii,* or otherwise, to make the affidavit.

In the absence of evidence of limitation upon the powers of the officer his official rank makes no difference in the application of the rule, because, provided the official relationship of the affiant appears in the affidavit, it will not, for the purpose of defeating that act, be presumed, in the absence of proof to the contrary, that he did it otherwise than in his official capacity.

Especially is this true where a corporation affirms, not repudiates, the validity of the proceeding of which the affidavit is a part.

Tested by these rules, the affidavit of the vice president was the affidavit of the corporation, the holder of the mortgage, and it was unnecessary that it should appear that the vice president was authorized, *virtute officii* or otherwise, to make the affidavit.

The presumption of authority was *prima facie* established by the allegations of the affidavit, which may be relied upon, in view of its positive affirmance, to show that the affiant had sufficient knowledge of the facts to make the requisite affidavit.

Accordingly the judgment under review must be reversed and judgment in the court below ordered for the plaintiff, in accordance with the stipulation in this case.

*For affirmance*—None.

*For reversal*—THE CHIEF JUSTICE, GARRISON, SWAYZE, REED, TRENCHARD, BOGERT, VREDENBURGH, GREEN, GRAY, DILL, J.J.   10.